**CTC COMMUNICATIONS CORP.**

TARIFF F.C.C. No. 3
Section 2
Original Page 58

## ACCESS SERVICE

## SECTION 2 - GENERAL REGULATIONS, (CONT'D.)

2.12.    Payment Arrangements, (Cont'd.)

2.12.6   Ordering, Rating and Billing of Access Services Where More Than One Exchange Company is Involved

The provision of meet point billing are applicable to Local Transport Termination and Facility (if applicable), Transport Multiplexing, Switched Access Channel Mileage recurring charges only. The provision of meet point billing are also applicable to the Switched Access Local Switching Installation nonrecurring charge and the Directory Assistance Service Installation nonrecurring charge when the provision set forth (I), following are applicable. All other recurring and nonrecurring charges for services provided by each Exchange Telephone Company are billed under each company's rates as set forth in (B) through (E), following.

The Company accepts and adheres to the Ordering and Billing Forum guidelines, Multiple Exchange Carrier Access Billing (MECAB) and Multiple Exchange Carrier Ordering and Design (MECOD).

The Company will handle ordering, rating and billing of Access Services under this tariff where more than one Exchange Company is involved in the provision of Access Service as follows.

A.    When a Feature Group B Switched Access Service is ordered by a customer where one end of the Local Transport element is in the Company's service territory and the other end is located in another exchange company's service territory and when notified by the Company which excepts the order that the involved Exchange Telephone Companies cannot implement multi-company billing (meet billing), ordering, provisioning, rating, and billing regulations, as set forth in (1) preceding will also apply to the Feature Group B.

---

Issue Date: April 4, 2001                                    Effective Date: April 5, 2001

Issued:                          Pamela L. Hintz
                    Director of Regulatory and Tariff Compliance
                    360 Second Avenue
                    Waltham, MA 02451

CTC COMMUNICATIONS CORP.

TARIFF F.C.C. No. 3
Section 2
Original Page 59

**ACCESS SERVICE**

## SECTION 2 - GENERAL REGULATIONS, (CONT'D.)

2.12.   Payment Arrangements, (Cont'd.)

2.12.6   Ordering, Rating and Billing of Access Services Where More Than
One Exchange Company is Involved

B.   Except as set forth in the (A), preceding, when Feature Group D Switched Access
Service or Directory Assistance Service is ordered by a customer where one end
of the Local Transport Element is in the Company operating territory and the other
end is in another Exchange Telephone Company operating Territory, the order shall
be received as follows:

1.   For Feature Group B and D Switched Access Service ordered to an end
office, the Exchange Telephone Company in whose operating territory the
end office is located must receive the order from the customer.

2.   For Feature Group B or D Switched Access Service ordered to an Access
Tandem, the Exchange Telephone Company in whose operating territory
the access tandem is located must receive the order from the customer.

3.   For services ordered in (1) or (2), preceding, the Exchange Telephone
Company in whose operating territory the customer premises is located
must also receive a copy of the order from the customer.

Each Exchange Telephone Company will provide the portion of the Local
Transport element in its operating territory to an interconnection point (IP)
with the another Exchange Telephone Company and will bill the charges in
accordance with its Access Service Tariff.   The rates for the Local
Transport Element will be determined as set forth in (F), following.   When
Switched Access Service is ordered by a customer where the customer
designated premises is located in the Company's Service Territory and
neither the access tandem nor the end office is located in the Company's
operating territory, the Switched Access Local Switching Installation
nonrecurring will be determined as set forth in (I), following.   When
Directory Assistance Service is ordered by a customer where the customer
designated premises is located in the Company's Service Territory and the
DA location is located in another Exchange Telephone Company's
operating territory, the DA Installation nonrecurring charge will be
determined as set forth in (I), following.   All other appropriate charges are
in each Exchange Companies tariffs are applicable.

Issue Date: April 4, 2001

Effective Date: April 5, 2001

Issued:

Pamela L. Hintz
Director of Regulatory and Tariff Compliance
360 Second Avenue
Waltham, MA 02451

Issue Date: April 4, 2001

Effective Date: April 5, 2001

Issued:                          Pamela L. Hintz
                    Director of Regulatory and Tariff Compliance
                    360 Second Avenue
                    Waltham, MA 02451

CTC COMMUNICATIONS CORP.

TARIFF F.C.C. No. 3
Section 2
Original Page 61

## ACCESS SERVICE

## SECTION 2 - GENERAL REGULATIONS, (CONT'D.)

2.12    Payment Arrangements, (Cont'd.)

2.12.6    Ordering, Rating and Billing of Access Services Where More Than
One Exchange Company is Involved, (cont'd.)

C.    When a WATS Access Line Service is ordered and Channel Mileage applies (i.e.,
the WATS Serving Office and the end user end office are not coterminous) and one
end if the Channel Mileage element sis in the Company operating territory and the
other end is in another Exchange Telephone company operating territory, the
Exchange Telephone Company whose operating territory the end office is located
must receive the order form the customer.  In addition, the Exchange telephone
Company in whose operating territory the WATs Serving Office is located mst also
receive a copy of the order from the customer.  Each Exchange Telephone
Company will provide the portion of the Channel Mileage element in its operating
territory to an Interconnection Point (IP) with the other Exchange telephone
Company and will bill the charges in accordance with its Access Service tariff.  The
rate for channel mileage element will be determined as set forth in (F) following.
All other appropriate charges in each Exchange Telephone Company Tariff are
applicable.

D.    Except when a WATS Access Line Service is ordered as set forth in (C) preceding,
when a Special Access Service is ordered by a customer where one end of the
Channel Mileage Element is in the Company Operating Territory and the other end
is in another Exchange Telephone Company operating Territory, except for Special
Access Service provided with the use of Hubs, either of the Exchange Telephone
Companies may receive the order from the Customer.  In addition, the other
Exchange Telephone Company must receive a copy of the order from the customer.
One of the Exchange Telephone Companies will coordinate the order as mutually
agreed upon by the Exchange Telephone Companies.  Each Exchange Telephone
Company will provide the portion of the Channel Mileage Element in its operating
territory to an Interconnection Point (IP) with another Exchange Telephone
Company and will be the charges in accordance with its Access Service Tariff.  The
rate for the Channel Mileage element will be determined as set forth in (F),
following.

Issue Date: April 4, 2001

Effective Date: April 5, 2001

Issued:                Pamela L. Hintz
                Director of Regulatory and Tariff Compliance
                360 Second Avenue
                Waltham, MA 02451

CTC COMMUNICATIONS CORP.

TARIFF F.C.C. No. 3
Section 2
Original Page 62

## ACCESS SERVICE

## SECTION 2 - GENERAL REGULATIONS, (CONT'D.)

2.12    Payment Arrangements, (Cont'd.)

    2.12.6   Ordering, Rating and Billing of Access Services Where More Than One Exchange Company is Involved, (cont'd.)

        E.      When Switched Access Service involving a Hub is ordered by a customer where the Hub is located in the Company's operating territory and neither the access tandem nor the end office is located in the Company's operating territory, the Switched Access Local Switching Installation nonrecurring charge will be determined as set forth in (L), following. All other appropriate charges in each exchange telephone Company tariff are applicable.

            When Directory Access Service involving a Hub is ordered by a customer where the Hub is located in the Company's operating Territory and the DA Location is located in another Exchange Telephone Company's operating territory, the Directory Access Installation nonrecurring charge will be determined as set forth in (I), following. All other appropriate charges in each Exchange telephone Company's tariff are applicable.

        F.      The rates for the Switched Access Local Transport Facility applicable to Host / Remote Transport Facility and Channel Mileage elements and the rate for the Special Access Channel Mileage for services provided as set forth in (B) through (E) preceding are determined as follows.

            1.      Determine the appropriate Switched Access Local Transport Channel Mileage, Local Transport Facility applicable Host / Remote Transport Facility, Special Access Channel Mileage by computing the Airline Mileage between the two end of the Local Transport Channel Mileage, Local Transport Facility, Host / Remote Transport Facility or Special Access Channel Mileage element. Determine the airline mileage for the Local Transport Channel Mileage, Local Transport Facility Charge, Host / Remote Transport Facility Charge using V&H method as set forth in as set forth in Section 2.13.2, following.

---

Issue Date: April 4, 2001

Effective Date: April 5, 2001

Issued:                          Pamela L. Hintz
                    Director of Regulatory and Tariff Compliance
                    360 Second Avenue
                    Waltham, MA 02451

CTC COMMUNICATIONS CORP.

TARIFF F.C.C. No. 3
Section 2
Original Page 63

ACCESS SERVICE

## SECTION 2 - GENERAL REGULATIONS, (CONT'D.)

2.12    Payment Arrangements, (Cont'd.)

   2.12.6   Ordering, Rating and Billing of Access Services Where More Than
            One Exchange Telephone Company is Involved, (cont'd.)

      F.    (Cont'd.)

            2.    For Feature Group B and Feature D  Switched Access Service with
                  Tandem Switched Transport, the transport charges are determined as set
                  forth in (a) through (g), following.

                  a)    Multiply:

                        The number of access minutes
                                by
                        the number of airline miles as determined in (A) preceding
                                by
                        the Company's appropriate Local Transport Facility per mile per
                        access minute rate
                                by
                        the Company's billing percentage factor.

                  b)    Divide:

                        The product of (a) by 100:

                        The resulting amount is the total Local Transport Facility Charge.

                  c).   Multiply:

                        The number of access minutes
                                by
                        the Company's appropriate Local Transport Termination per minute
                        rate.

---

Issue Date: April 4, 2001                                    Effective Date: April 5, 2001

Issued:                     Pamela L. Hintz
                    Director of Regulatory and Tariff Compliance
                    360 Second Avenue
                    Waltham, MA 02451

CTC COMMUNICATIONS CORP.

TARIFF F.C.C. No. 3
Section 2
Original Page 64

**ACCESS SERVICE**

**SECTION 2 - GENERAL REGULATIONS, (CONT'D.)**

2.12    Payment Arrangements, (Cont'd.)

2.12.6    Ordering, Rating and Billing of Access Services Where More Than One Exchange Telephone Company is Involved, (cont'd.)

F.    (Cont'd.)

2.    (Cont'd.)

d)    Divide:

The product of (c) by two (2). The resulting amount is the total Local Transport Termination charge.

e)    Multiply

The number of access minutes
By
The Company's appropriate Transport Multiplexing per minute rate

f)    Divide:

The product of (c) by two (2). The resulting amount is the total Transport Multiplexing charge.

g)    Add:

The products of (b), (d) and (f) for the Total Local Transport charges subject to Meet Point Billing regulations.*

The products of (1) and (2) for the Company's total Local Transport-Common Switched Transport charges.

*    Additional Local Transport Rates and charges may apply as set forth in Section 6, following, which are not subject to Meet Point Billing regulations

Issue Date: April 4, 2001                                    Effective Date: April 5, 2001

Issued:                        Pamela L. Hintz
                        Director of Regulatory and Tariff Compliance
                        360 Second Avenue
                        Waltham, MA 02451

CTC COMMUNICATIONS CORP.

TARIFF F.C.C. No. 3
Section 2
Original Page 65

ACCESS SERVICE

## SECTION 2 - GENERAL REGULATIONS, (CONT'D.)

2.12    Payment Arrangements, (Cont'd.)

    2.12.6   Ordering, Rating and Billing of Access Services Where More Than
One Exchange Telephone Company is Involved, (cont'd.)

        F.    (Cont'd.)

            3.    For Feature Group B and D Switched Access Service with Direct Trunked transport, determine the rate (utilizing both the fixed and per mile channel mileage elements) for airline mileage determined in (1) preceding. Multiply such rate by the Company's billing percentage factor and divide by 100 to obtain the Local Transport channel Mileage element charges.

            4.    For Special Access Service, determine the rate (utilizing both the fixed and the per mile Channel Mileage rate elements) for the airline mileage determined in (1) preceding using the Company's Tariff. Multiply such rate by the Telephone Company's billing percentage factor and divide by 100 to obtain the Channel Mileage element charges.

        G.    The interconnection points will be determined by the Exchange Telephone Companies involved. The billing percentage (BP) factor for the Company for the service between the involved offices is listed in the National Exchange Carrier Association, Inc. Tariff No. 4.

        H.    If any charges are made in meet point billing arrangements as set forth in (B) through (E) preceding, the Company will give affected customer's 30 day's notice.

---

Issue Date: April 4, 2001                                                Effective Date: April 5, 2001

Issued:                          Pamela L. Hintz
                    Director of Regulatory and Tariff Compliance
                    360 Second Avenue
                    Waltham, MA 02451

CTC COMMUNICATIONS CORP.

TARIFF F.C.C. No. 3
Section 2
Original Page 66

ACCESS SERVICE

## SECTION 2 - GENERAL REGULATIONS, (CONT'D.)

2.12    Payment Arrangements, (Cont'd.)

    2.12.6  Ordering, Rating and Billing of Access Services Where More Than One Exchange Telephone Company is Involved, (cont'd.)

        I.    When Switched Access Service is ordered by a customer where the customer designated premises or Hub is located in the Company operating territory and neither access tandem nor the end office is located in the Company's Operating Territory, the charge for Switched Access Service Local Switching Installation nonrecurring charge which applies per line or trunk will be an amount equal to one half of the local Switching Installation nonrecurring charge for each line or trunk provided to the end office or access tandem. All remaining nonrecurring charges for the local transport provided by the Company in its operating territory are applicable.

            When Directory Access Service is ordered by a customer where the customer designated premises is located in the Company's Operating Territory and the DA location is located in another Exchange Telephone Company's operating territory, the charge for the Directory Access Service Installation nonrecurring charge which applies per trunk will be an amount equal to one half of the Directory Access Service Installation nonrecurring charge for each trunk provided to the DA location. All remaining nonrecurring charges for the Local Transport provided by the Company in its operating territory are applicable.

        J.    If the Company acts as an intermediate, non-terminating local exchange carrier, Tandem Switched Transport Termination, Direct Trunked Transport Channel Mileage fixed rates and / or Special Access Channel Mileage fixed rates, as determined in (F) preceding, will not be applied to the meet point arrangement.

---

Issue Date: April 4, 2001

Effective Date: April 5, 2001

Issued:                 Pamela L. Hintz
                 Director of Regulatory and Tariff Compliance
                 360 Second Avenue
                 Waltham, MA 02451

**CTC COMMUNICATIONS CORP.**

TARIFF F.C.C. No. 3
Section 2
Original Page 67

## ACCESS SERVICE

### SECTION 2 - GENERAL REGULATIONS, (CONT'D.)

2.12    Payment Arrangements, (Cont'd.)

2.12.7  Ordering, Rating and Billing of Access Services when a Radio Telephone Utility (RTU) Carrier Service and Telecommunications Relay Service (TRS) Interconnection Are Involved.

When Switched Access Service involves interstate traffic which originates or terminates to RTU Services, where the local transport is provided by the Company and the end user connection is provided by an RTU Carrier, the Company will provide its part of the Switched Access Service in accordance with Section 6 following, subject to the following regulations.

A.    For traffic which originates or terminates at a RTU Interconnection, Carrier Common Line Access Service and Switched Access Service Local Switching rates and charges as specified in Section 4.9 and 6.8 following, respectively will not apply

B.    For traffic which originates at TRS Equal Access Interconnections through provided through a Access Tandem, Carrier Common Line Access Service and Switched Access Service Local Switching Rates and Charges as set forth in Section 4.9. and Section 6.8, following, respectively, will not apply to that portion of the call from the serving wore center of the TRS carrier to the serving wire center of the Interexchange Carrier.   The mileage used to determine the Direct Trunked Transport Channel Mileage billed to the TRS Carrier and the Channel Mileage or Local Transport Facility mileage billed to the Interexchange Carrier is calculated as set forth in Section , following.

---

Issue Date: April 4, 2001                                          Effective Date: April 5, 2001

Issued:                         Pamela L. Hintz
                        Director of Regulatory and Tariff Compliance
                        360 Second Avenue
                        Waltham, MA 02451

CTC COMMUNICATIONS CORP.

TARIFF F.C.C. No. 3
Section 2
Original Page 68

ACCESS SERVICE

## SECTION 2 - GENERAL REGULATIONS, (CONT'D.)

2.13    Application of Rates

The regulations set forth in this section govern the application of rates for services contained in other section of this tariff.

2.13.1    Charges Based On Duration of Use

Originating and terminating calls will be measured by the Company to determine the basis for computing chargeable access minutes.

Issue Date: April 4, 2001

Effective Date: April 5, 2001

Issued:                      Pamela L. Hintz
                  Director of Regulatory and Tariff Compliance
                  360 Second Avenue
                  Waltham, MA 02451

CTC COMMUNICATIONS CORP.

TARIFF F.C.C. No. 3
Section 2
Original Page 69

## ACCESS SERVICE

## SECTION 2 - GENERAL REGULATIONS, (CONT'D.)

2.13    Application of Rates, (Cont'd.)

    2.13.2   Rates Based Upon Distance

        Where the charges for service are specified based upon distance, the following rules apply:

        A.      Distance for jointly provided transport would be calculated between the subtending tandem and the Company's host switch. In instances where the host switch is located inside a rate center, as defined, by the Incumbent Local Exchange Carrier, normally served by a different serving wire center, the distance between the host switch and the serving wire center normally associated with that rate center also applies and is measured as airline distance between the Company's host switch and the serving wire center serving that rate center.

            The serving wire center is a set of geographic coordinates as referenced in NATIONAL EXCHANGE CARRIER ASSOCIATION, INC. TARIFF FCC NO. 4. Associated with the serving wire centers are NPA-NXX combinations (where NPA is the area code and NXX is the first three digits of a seven-digit telephone number). The NPA NXX combinations. Except that, until the NATIONAL EXCHANGE CARRIER ASSOCIATION, INC. TARIFF F.C.C. NO. 4 is revised to include certain Company wire centers and remote service areas, the airline distance should be determined utilizing the following "V" (vertical) and "H" (horizontal) coordinates:

Issue Date: April 4, 2001                                Effective Date: April 5, 2001

Issued:                      Pamela L. Hintz
                         Director of Regulatory and Tariff Compliance
                         360 Second Avenue
                         Waltham, MA 02451

CTC COMMUNICATIONS CORP.

TARIFF F.C.C. No. 3
Section 2
Original Page 70

## ACCESS SERVICE

## SECTION 2 - GENERAL REGULATIONS, (CONT'D.)

2.13   Application of Rates, (Cont'd.)

    2.13.2   Rates Based Upon Distance

        A.   (Cont'd.)

           1.   LATA #126

| | | | | HOST SWITCH | | |
|---|---|---|---|---|---|---|
| ST | NPA | NXX | RATE CENTER NAME | | | |
| MA | 413 | 216 | Easthampton | SPFDMAXLBB0 | 4617.83 | 1406.48 |
| MA | 413 | 217 | Williamstown | SPFDMAXLBB0 | 4617.83 | 1406.48 |
| MA | 413 | 233 | Springfield | SPFDMAXLBB0 | 4617.83 | 1406.48 |
| MA | 413 | 255 | Greenfield | SPFDMAXLBB0 | 4617.83 | 1406.48 |
| MA | 413 | 353 | Amherst | SPFDMAXLBB0 | 4617.83 | 1406.48 |
| MA | 413 | 389 | NorthAdams | SPFDMAXLBB0 | 4617.83 | 1406.48 |
| MA | 413 | 437 | Holyoke | SPFDMAXLBB0 | 4617.83 | 1406.48 |
| MA | 413 | 455 | Ludlow | SPFDMAXLBB0 | 4617.83 | 1406.48 |
| MA | 413 | 486 | East Longmeadow | SPFDMAXLBB0 | 4617.83 | 1406.48 |
| MA | 413 | 509 | Wilbraham | SPFDMAXLBB0 | 4617.83 | 1406.48 |
| MA | 413 | 570 | Northampton | SPFDMAXLBB0 | 4617.83 | 1406.48 |
| MA | 413 | 571 | Great Barrington | SPFDMAXLBB0 | 4617.83 | 1406.48 |
| MA | 413 | 615 | Ware | SPFDMAXLBB0 | 4617.83 | 1406.48 |
| MA | 413 | 629 | Pittsfield | SPFDMAXLBB0 | 4617.83 | 1406.48 |
| MA | 413 | 688 | South Deerfield | SPFDMAXLBB0 | 4617.83 | 1406.48 |
| MA | 413 | 701 | Monson | SPFDMAXLBB0 | 4617.83 | 1406.48 |

Issue Date: April 4, 2001

Effective Date: April 5, 2001

Issued:

           Pamela L. Hintz
        Director of Regulatory and Tariff Compliance
        360 Second Avenue
        Waltham, MA 02451

Issue Date: April 4, 2001

Effective Date: April 5, 2001

Issued:                      Pamela L. Hintz
                            Director of Regulatory and Tariff Compliance
                            360 Second Avenue
                            Waltham, MA 02451

CTC COMMUNICATIONS CORP.

TARIFF F.C.C. No. 3
Section 2
Original Page 72

## ACCESS SERVICE

## SECTION 2 - GENERAL REGULATIONS, (CONT'D.)

2.13    Application of Rates, (Cont'd.)

    2.13.2  Rates Based Upon Distance

        A.      (Cont'd.)

            1.      LATA #126, (cont'd.)

| ST | | | HOST SWITCH | | | |
| --- | --- | --- | --- | --- | --- | --- |
| MA | 413 | 767 | Palmer | SPFDMAXLBB0 | 4617.83 | 1406.48 |
| MA | 413 | 833 | Stockbridge | SPFDMAXLBB0 | 4617.83 | 1406.48 |
| MA | 413 | 875 | Westfield | SPFDMAXLBB0 | 4617.83 | 1406.48 |
| MA | 413 | 888 | Chicopee | SPFDMAXLBB0 | 4617.83 | 1406.48 |
| MA | 413 | 935 | Longmeadow | SPFDMAXLBB0 | 4617.83 | 1406.48 |
| MA | 413 | 937 | Lee | SPFDMAXLBB0 | 4617.83 | 1406.48 |
| MA | 413 | 998 | Southwick | SPFDMAXLBB0 | 4617.83 | 1406.48 |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

Issue Date: April 4, 2001                                    Effective Date: April 5, 2001

Issued:                          Pamela L. Hintz
                        Director of Regulatory and Tariff Compliance
                        360 Second Avenue
                        Waltham, MA 02451

Issue Date: April 4, 2001                                    Effective Date: April 5, 2001

Issued:                          Pamela L. Hintz
                    Director of Regulatory and Tariff Compliance
                    360 Second Avenue
                    Waltham, MA 02451

**CTC COMMUNICATIONS CORP.**

TARIFF F.C.C. No. 3
Section 2
Original Page 74

<u>ACCESS SERVICE</u>

<u>SECTION 2 - GENERAL REGULATIONS, (CONT'D.)</u>

2.13    Application of Rates, (Cont'd.)

    2.13.2  Rates Based Upon Distance

        B.    The airline distance between any two wire centers is determined as follows:

            1.    Obtain the "V" and "H" coordinates from the above-referenced NECA tariff.

            2.    Compute the difference between the "V" coordinates of the two wire centers; and the difference between the two "H" coordinates.

            3.    Square each difference obtained in step (2) above.

            4.    Add the square of the "V" difference and the square of the "H" difference obtained in step (3).

            5.    Divide the sum of the squares by 10.  Round to the next higher whole number if any fraction is obtained.

            6.    Obtain the square root of the whole number result obtained above. Round to the next higher whole number if any fraction is obtained.  This is the airline mileage.

            7.    FORMULA =

$$\sqrt{\frac{(V1 - V2)^2 + (H1 - H2)^2}{10}}$$

---

Issue Date: April 4, 2001

Effective Date: April 5, 2001

Issued:

        Pamela L. Hintz
        Director of Regulatory and Tariff Compliance
        360 Second Avenue
        Waltham, MA 02451

CTC COMMUNICATIONS CORP.

TARIFF F.C.C. No. 3
Section 2
Original Page 75

**ACCESS SERVICE**

**SECTION 2 - GENERAL REGULATIONS, (CONT'D.)**

2.14    Allowances for Interruptions

Interruptions in service, which are not due to the negligence of, or noncompliance with the provisions of this tariff by, the Customer or the operation or malfunction of the facilities, power or equipment provided by the Customer, will be credited to the Customer as set forth in Section 2.14.1 following, for the part of the service that the interruption affects.

2.14.1   Credit for Interruptions

A.    A credit allowance will be made when an interruption occurs because of a failure of any component furnished by the Company under this tariff. An interruption period begins when the Customer reports a service, facility or circuit to be interrupted and releases it for testing and repair. An interruption period ends when the service, facility or circuit is operative. If the Customer reports a service, facility or circuit to be inoperative but declines to release it for testing and repair, it is considered to be impaired, but not interrupted.

B.    For calculating credit allowances, every month is considered to have thirty (30) days. A credit allowance is applied on a pro rata basis against the rates specified hereunder and is dependent upon the length of the interruption. Only those facilities on the interrupted portion of the circuit will receive a credit.

---

Issue Date: April 4, 2001

Effective Date: April 5, 2001

Issued:                    Pamela L. Hintz
                Director of Regulatory and Tariff Compliance
                360 Second Avenue
                Waltham, MA 02451

CTC COMMUNICATIONS CORP.

TARIFF F.C.C. No. 3
Section 2
Original Page 76

### ACCESS SERVICE

## SECTION 2 - GENERAL REGULATIONS, (CONT'D.)

2.14    Allowances for Interruptions, (Cont'd.)

2.14.1 Credit for Interruptions, (cont'd.)

B.    (cont'd.)

A credit allowance will be given for interruptions of thirty (30) minutes or more. Credit allowances shall be calculated as follows:

### Interruptions of 24 Hours or Less

| Length of Interruption | Interruption Period To Be Credited |
|---|---|
| Less than 30 minutes | None |
| 30 minutes up to but not including 3 hours | 1/10 Day |
| 3 hours up to but not including 6 hours | 1/5 Day |
| 6 hours up to but not including 9 hours | 2/5 Day |
| 9 hours up to but not including 12 hours | 3/5 Day |
| 12 hours up to but not including 15 hours | 4/5 Day |
| 15 hours up to but not including 24 hours | One Day |

---

Issue Date: April 4, 2001

Effective Date: April 5, 2001

Issued:                          Pamela L. Hintz
                    Director of Regulatory and Tariff Compliance
                    360 Second Avenue
                    Waltham, MA 02451

CTC COMMUNICATIONS CORP.

TARIFF F.C.C. No. 3
Section 2
Original Page 77

## ACCESS SERVICE

## SECTION 2 - GENERAL REGULATIONS, (CONT'D.)

2.14    Allowances for Interruptions, (Cont'd.)

    2.14.1 Credit for Interruptions, (cont'd.)

        B.    (cont'd.)

Two (2) or more interruptions of fifteen (15) minutes or more during any one twenty-four (24) hour period shall be considered as one (1) interruption.

Interruptions Over 24 Hours and Less Than 72 Hours

Interruptions over twenty-four (24) hours and less than seventy-two (72) hours will be credited one-fifth (1/5) day for each 3-hour period or fraction thereof. No more than one (1) full day's credit will be allowed for any period of twenty-four (24) hours.

Interruptions Over 72 Hours

Interruptions over seventy-two (72) hours will be credited two (2) days for each full twenty-four (24) hour period. No more than thirty (30) days credit will be allowed for any one (1) month period.

Issue Date: April 4, 2001

Effective Date: April 5, 2001

Issued:                    Pamela L. Hintz
                        Director of Regulatory and Tariff Compliance
                        360 Second Avenue
                        Waltham, MA 02451

CTC COMMUNICATIONS CORP.

TARIFF F.C.C. No. 3
Section 2
Original Page 78

## ACCESS SERVICE

## SECTION 2 - GENERAL REGULATIONS, (CONT'D.)

2.14    Allowances for Interruptions, (Cont'd.)

2.14.2    Limitations on Allowances

No credit allowance will be made for:

A.    interruptions due to the negligence of, or noncompliance with the provisions of this tariff by, the Customer, authorized user, joint user, or other common carrier providing service connected to the service of the Company;

B.    interruptions due to the negligence of any person other than the Company, including but not limited to the Customer or other common carriers connected to the Company's facilities;

C.    interruptions due to the failure or malfunction of non-Company equipment;

D.    interruptions of service during any period in which the Company is not given full and free access to its facilities and equipment for the purpose of investigating and correcting interruptions;

E.    interruptions of service during a period in which the Customer continues to use the service on an impaired basis;

F.    interruptions of service during any period when the Customer has released service to the Company for maintenance purposes or for implementation of a Customer order for a change in service arrangements; and

G.    interruption of service due to circumstances or causes beyond the control of Company.

---

Issue Date: April 4, 2001                                    Effective Date: April 5, 2001

Issued:                          Pamela L. Hintz
                          Director of Regulatory and Tariff Compliance
                          360 Second Avenue
                          Waltham, MA 02451

Exhibit "B"



CTC COMMUNICATIONS    CTC CREDIT

# Customer Service Agreement

## Installation Information

Empire Office Equipment

21 Murray Street
New York, NY  10007

Contact: Peter Gaslow

Phone: (212) 349-5530

EMail:

Fax:

## Billing Information

Contact:

Phone:

EMail:

Fax:

## Credit Information

[X] Corporation      [ ] Partnership      [ ] Proprietorship      [ ] Tax Exempt (Attach Proof)   [ ] Other

Nature of Business: 52

Years in Business: Dealership    SIC:    Tax ID:13-1945763    D&B #:

## Ownership Information (Required for Partnerships, Proprietorships and Small Businesses)

| Name | Address | Phone | SS# |
|---|---|---|---|
| | | | |

## Reference Information (3 Major Trade References and Bank)

| Trade Name | City, State | Phone | Account # |
|---|---|---|---|
| Steelcase Inc | Grand Rapids MI | 616-246-4515 | |
| Kimball International | Jasper IN | 812-482-8118 | |
| Harter Group | Kansas City MO | 800-543-5459 | |

| Bank Name | Contact | | Account # |
|---|---|---|---|
| Chase | Kevin Murphy | | 117008109 |

## Billing Options

[ ] IntelliBILL      [ ] Call Detail      [ ] International Usage   [ ] Expensive Calls
[ ] IntelliVIEW      [ ] Suppress Detail  [ ] Time of Day Usage     [ ] Lengthy Calls
[ ] Corp. Acct. Billing  [ ] Area Code Summary  [ ] Freq. Called Summary

### Office Use Only

App. Code:  User ID:  Credit Dpt.
Date:  Account #:
DT1:    DT2:

Comments  Month to Month Term Contract

## Telephone Number (Attach Additional Sheets if Necessary)

212-349-5530

## Letter of Authorization

Customer hereby authorizes CTC to perform any investigation necessary to determine the credit worthiness of the Company.  CTC reserves the right to deny service and terminate this agreement or otherwise require a deposit as a condition to service from any applicant whose credit history is found to be unsatisfactory.  All services shall be provided in accordance with the Terms and Conditions set forth in this Agreement.

Accepted By:
Customer

Customer Authorized Representative

Peter Gaslow
Name and Title

Date: 06/30/99

CTC Communications Corp.

CTC Account Executive    Date: 06/30/99
Name:  Jeffrey Beacher

CTC Branch Manager    Date: 06/30/99

## Letter of Authorization

The Customer's signature below confirms that for each of the phone numbers included in this Customer Service Agreement that

a) Customer selects CTC Communications Corp. ("CTC") as its primary provider of
☒ local exchange service ☒ intraLATA toll service ☐ long distance service ; that

b) Customer designates CTC as its agent for purposes of changing primary service provider(s); that

c) Customer understands that the selection of a new intraLATA toll or long distance service provider may result in the imposition of a charge by Customer's local exchange company for changing service provider(s); that

d) Customer understands that only one service provider can be designated as the primary carrier for each of the services selected above; and that

e) Customer is the Customer of record or other individual authorized to select the provider(s) for the services indicated above.

Authorized Signature
Name:
Title:     Date 06/30/99

## Authorization to Access Customer Confidential Information

Authorization of Company's Use of Customer Proprietary Network Information (CPNI). Under Section 222 of the Telecommunications Act (the "Act") a customer has the right, and the carrier, an obligation, to protect the confidentiality of CPNI. CPNI includes, but is not limited to, customer account information pertaining to usage, calling plans and other presubscribed products and services. The Act also restricts a carrier from accessing CPNI absent a customer's approval for purposes other than the provisioning of service. The parties recognize that access to such information will assist CTC in determining those CTC products and services which best suit the Customer's specific telecommunications needs. Therefore, during the term of this Agreement, Customer's signature below authorizes CTC to access Customer's account information. Except as may be required by law, CPNI shall not be disclosed to any third (3rd) party without Customer's express written consent.

While presubscribed to CTC's services (or until such other time as I otherwise affirmatively revoke or limit), I hereby authorize CTC to access my CPNI.

Authorized Signature
Name:
Title:     Date:06/30/99

CTC Communi... ons Corp. ("CTC" or the "Company") agrees to provide Customer with those services identified under applicable Service Order(s) executed by the Customer from time to time during this Agreement. Such Service Order(s) are incorporated herein by reference and all Services provided hereunder shall be subject to the terms and conditions set forth herein. Certain services provided under Company Service Order(s) are subject to the terms and conditions found in CTC's tariffs on file with state regulatory agencies and the Federal Communications Commission (the "FCC") as amended from time to time by the Company. For such services, in the event of any conflict between the terms and conditions set forth herein and those identified in CTC's tariff, in all instances, CTC's tariff(s) shall prevail.

**Payments and Financial Responsibility.** All invoices are due and payable upon Customer's receipt thereof. Any payment not received within thirty (30) days following the due date shall be deemed past due. CTC reserves the right to assess a late fee of one and one half percent (1.5%) per month or the highest amount permitted by law on any past due balance. Notwithstanding the foregoing, invoiced charges not paid within thirty (30) days will also be ineligible for any cash rebates or volume discounts which may have otherwise applied. Customer shall be liable for all charges incurred as a result of Customer's use of CTC's services, including use resulting from theft or unauthorized use of such Service. Customer shall notify CTC in writing of any disputed charge or amount within thirty (30) days of Customer's receipt of any invoice containing such disputed charge or amount

**Term Commitment.** Customer agrees to utilize CTC's Service(s) for the duration of the term(s) specified in applicable Customer Service Orders.

**Termination for Default.** The Customer shall be in default of this Agreement in the event a) Customer fails to pay any amount due hereunder within thirty (30) days of the payment due date, b) the Customer becomes insolvent, makes an assignment for the benefit of creditors, files or has filed against it a petition of bankruptcy, and such proceeding is not dismissed within forty-five (45) days, c) Customer utilizes CTC services for any unlawful purpose or for any other purpose than that for which the Service is intended. Notwithstanding any other remedies which CTC may have available to it by law or equity, in the event of Customer's default of this Agreement, CTC may terminate this Agreement in accordance with the notice requirements set forth in the applicable CTC tariff(s) and discontinue any and all Services provided pursuant to any Service Order issued hereunder. CTC reserves the right to cancel any service used for unlawful purposes or for any purpose other than that which the service is indented. Nothing contained herein shall relieve customer of its obligations to pay CTC for charges incurred up to the date of termination.

**Termination without Cause.** _Month-to-Month._ The Customer may terminate any service provided under a month-to-month Service Order with sixty (60) days written notice. _Term Plans._ In the event Customer terminates any local service order issued under a term agreement with the Company, Customer will be responsible for any termination fees assessed CTC by its underlying provider(s) as a result of such early termination. Notwithstanding the foregoing Customer may terminate any Service Order for long distance service issued under a Term Plan at any time during the first (60) days following commencement of Service. Thereafter, the Customer may terminate such Service Order by paying all outstanding charges incurred through the effective date of termination as well as an early termination charge. Such termination charge shall equal twenty-five percent (25%) of the customer's average monthly charges multiplied by the number of months remaining in the term. An equipment termination charge may also apply in the event Customer terminates any Service offered in conjunction with equipment supplied by the Company. The equipment termination charge shall be equal to the monthly recurring equipment charge multiplied by the number of months remaining in the then current term. Some service specific early termination charges may also apply. These charges apply only if detailed as Additional Terms and Conditions on a Service Addendum.

**Limitation of Liability.** CTC shall not be liable for any failure of performance of any of its obligations hereunder due to any cause beyond the reasonable control of the Company. Neither CTC nor its underlying carrier(s) shall be liable for any act or omission of any other company or companies furnishing a portion of any Service offered hereunder. Customer shall indemnify and hold CTC harmless for all claims for damages (including reasonable attorneys' fees) resulting from claims for libel, slander, infringement of copyright, or unauthorized use of any trademark, trade name or service mark, or any other injury to any person, property or entity arising out of the material, data, information or other content transmitted over CTC's facilities.

CTC MAKES NO WARRANTY, EXPRESS OR IMPLIED, AS TO THE DESCRIPTION, COMPLETENESS, QUALITY, MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE OF ANY SERVICE PROVIDED PURSUANT TO ANY SERVICE ORDER ISSUED HEREUNDER. CTC's liability for any damages arising from errors, mistakes, omissions, interruptions or delays of the Company, its agents, employees or underlying carriers in the course of establishing, furnishing, rearranging, moving, terminating, maintaining, restoring or changing Service or facilities provided hereunder, or the Company's failure to perform any other duty arising out of this Agreement shall not exceed an amount equivalent to the actual proportionate charge for the Service applicable to the period during which the Service was affected.

**Use of Service.** The Customer shall not use any CTC Service in any manner other than that for which the Service was intended and shall refrain from using the Company's services in any manner which would adversely affect the Company's equipment or the Company's service to others. The Company reserves the right to discontinue service without notice in the event of any such unlawful or adverse use.

**Rate and Product Changes.** CTC reserves the right to modify the rates for any Service provided pursuant to any Service Order issued under this Agreement with thirty (30) days written notice; provided, however, in the event any increase results in the Company's rate for a particular Service exceeding that of the dominant's carrier's tariffed rate for the same or similar Service, then, in such event, the Customer may terminate the applicable Service Order without liability with thirty (30) days written notice. Nothing contained in this paragraph shall relieve the Customer of its obligation to pay for services rendered up to and including the effective date of any such termination.

**Right of Entry.** Customer shall allow CTC reasonable access to Customer premises for purposes of inspecting or maintaining Company-provided equipment located on Customer's property.

**Assumption of Liability.** Under certain limited circumstances, CTC may assume Customer's obligations under an existing contract with Customer's local exchange company (LEC). In the event of any such assumption, Customer shall become liable to CTC for the satisfaction of all terms and conditions of such contractual obligations assumed by CTC, including full termination liability.

**Modifications.** This Agreement may only be modified by a written instrument executed by both parties.

**Assignment.** CTC may assign this Agreement in accordance with the laws of the Commonwealth of Massachusetts. Customer may not assign this Agreement without the written permission of the Company obtained in advance.

**Miscellaneous.** This Agreement shall be governed by the laws of the Commonwealth of Massachusetts. Failure of either party to insist upon the strict compliance by the other with any of the terms, covenants or conditions of this Agreement shall not be construed as a waiver of any subsequent breach. No provision of this Agreement which may be unenforceable shall in any way invalidate any other provision herein. The term of this Agreement shall run concurrent with any Service Order issued hereunder.

**Special Provisions Pertaining to CTC Calling Card Customers.** Subject to availability, CTC will supply Customer those billing card numbers requested by the Customer. Customer understands that billing card numbers are subject to change with thirty (30) days written notice by CTC and that all billing card number issued to Customer shall remain the property of CTC. Customer will be solely responsible for the distribution of billing card numbers to Customer's, employees, agents and other third parties. Customer shall remain responsible for all card usage arising from Customer's intentional or unintentional distribution of billing card numbers. All calling card usage is monitored by CTC's fraud control procedures. CTC reserves the right, but is under no obligation, to immediately deactivate any billing card number for which CTC suspects fraudulent use. Customer shall be liable for all calls placed using a CTC calling card, whether authorized or unauthorized, known or unknown.